425 So.2d 36 (1982)
Charles L. BAKER, Appellant,
v.
STATE of Florida, Appellee.
No. 80-748.
District Court of Appeal of Florida, Fifth District.
December 8, 1982.
Rehearing Denied January 14, 1983.
James B. Gibson, Public Defender, Michael S. Becker and Thomas R. Mott, Asst. Public Defenders, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Edward M. Chew, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The appellant was charged by indictment with first-degree premeditated murder and use of a firearm in the commission of a felony. His defense was insanity. He was tried, convicted and sentenced on both counts.
On appeal, we find no merit to appellant's argument in regard to the latitude allowed the state's expert witness, Dr. Carrera, *37 in rendering opinion testimony relating to the defendant's motives for the shooting. Such was clearly relevant to the issue of insanity. Jones v. State, 332 So.2d 615 (Fla. 1976).
The appellant next contends that he cannot be convicted and sentenced for murdering his wife by shooting her with a gun, as was charged in the indictment, and also convicted and sentenced for using a firearm during the commission of the felony. He argues that the "use of a firearm" offense in the instant factual context was the same criminal act constituting the murder, and that Count II of the indictment represents a "category four" lesser included offense of Count I. Brown v. State, 206 So.2d 377 (Fla. 1968). Based on the wording of the indictment counts, he is correct that Count II is a "category four" lesser included offense of Count I under the test of Brown.[1] But it is not a lesser included offense according to the Schedule of Lesser Included Offenses set forth in the Florida Standard Jury Instructions in Criminal Cases (1981), either under Category 1 or Category 2 thereof.
In the case of State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), the Florida Supreme Court, based on its consideration of two recent decisions of the United States Supreme Court,[2] receded from its holding in State v. Pinder, 375 So.2d 836 (Fla. 1979). In Hegstrom it was held that the double jeopardy clause of the Fifth Amendment to the United States Constitution does not prohibit multiple convictions in a single trial setting (which is the instant case) for discrete crimes arising out of the same offense.[3] The Pinder decision had been predicated on two United States Supreme Court cases[4] involving cumulative punishments for the same offense in successive prosecutions.
Subsequent to Hegstrom, the Florida Supreme Court again addressed the double jeopardy issue in Carlson v. State, 405 So.2d 173 (Fla. 1981), and reaffirmed their restrictive view of the scope of the protection afforded by the double jeopardy clause, relying on language from North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), wherein the United States Supreme Court wrote that the clause affords defendants three related protections:
It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.
Id. at 717, 89 S.Ct. at 2076. In Carlson, the Florida Supreme Court, applying the second of the guarantees enumerated in Pearce, held that a subsequent prosecution for the same offense, although under a different statute, was barred by the Blockburger test. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
*38 In Blockburger, the defendant was convicted both of sale of morphine hydrochloride and, in regard to the same sale, with having sold the drug without a written order of the purchaser. He received separate sentences for these two convictions. He argued that this constituted but one offense for which only a single penalty could be imposed. In disposing of this point, the Court created what has become known as "the Blockburger test" in regard to double jeopardy with the following language:
Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Gavieres v. United States, 220 U.S. 338, 342, 31 S.Ct. 421 [422], 55 L.Ed. 489, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in Morey v. Commonwealth, 108 Mass. 433: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Compare Albrecht v. United States, 273 U.S. 1, 11, 12, 47 S.Ct. 250 [253, 254], 71 L.Ed. 505, and cases there cited. Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed.
52 S.Ct. at 182.
In Hegstrom the Florida Supreme Court stated that its sole inquiry was to determine what punishment the Florida Legislature authorized for a single criminal transaction involving two or more separate, statutory offenses. The applicable statute, which abolished the "single transaction" rule, is section 775.021(4), Florida Statutes (1977), which became effective October 1, 1976. It reads:
Whoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed during said criminal episode, and the sentencing judge may order the sentences to be served concurrently or consecutively.
The Florida Supreme Court concluded that under its construction of the statute, Hegstrom, who had been convicted of both first-degree felony murder and the underlying felony of robbery, could not be sentenced both for felony murder and the underlying felony. But it also concluded that nothing in Blockburger or the Florida statute precluded multiple convictions for lesser included offenses.[5] Consequently, it affirmed Hegstrom's robbery conviction but vacated his separate sentence for robbery. Hegstrom dealt with a necessarily lesser included offense.
In State v. Monroe, 406 So.2d 1115 (Fla. 1981), the Florida Supreme Court, expressly reaffirming Hegstrom, held that, although section 775.021(4), Florida Statutes, precludes multiple sentences for lesser included offenses, multiple convictions for lesser included offenses are not barred by either the state or federal constitution. In that case Monroe had been convicted and sentenced for both robbery with a firearm and unlawful possession of a firearm while committing a felony, the latter being a necessarily lesser included offense. The Florida Supreme Court affirmed both convictions but reversed the sentence for the lesser included offense. The Hegstrom case was again *39 reaffirmed in State v. Thompson, 413 So.2d 757 (Fla. 1982).
In Borges v. State, 415 So.2d 1265 (Fla. 1982), the Florida Supreme Court rejected the argument that the determination of a lesser included offense, from a constitutional consideration, should focus on "the variables of evidentiary proof." Citing Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which contains the federal constitutional double jeopardy standard, the Borges court explained the constitutional test for a lesser included offense:
A less serious offense is included in a more serious one if all of the elements required to be proven to establish the former are also required to be proven, along with more, to establish the latter. (Emphasis in original.)
The Florida Supreme Court has held that Article I, Section 9 of the Florida Constitution is to be construed and applied in the same manner as the United States Supreme Court applied the Fifth Amendment to the United States Constitution in Albernaz. State v. Cantrell, 417 So.2d 260 (Fla. 1982).
In the present case, the two crimes with which Baker was charged were (1) premeditated murder, and (2) use of a firearm in the commission of a felony. The elements of first-degree murder relevant to the present case, as defined in section 782.04(1)(a), Florida Statutes (1981), are:
(i) the unlawful
(ii) killing
(iii) of a human being
(iv) when perpetrated from a premeditated design to effect the death of the person killed (or any other human being).
In relevant part, section 790.07(2), Florida Statutes (1981), the second statutory offense for which Baker was convicted, defines the elements of that offense as:
(i) displaying, using, threatening to use or attempting to use a firearm
(ii) while committing or attempting to commit any felony.
Using the Borges-Blockburger test, it is clear that the statutory elements of the two crimes for which Baker was convicted are not the same, nor are the statutory elements of one lesser constitutent elements of the other. Under Borges as well as federal constitutional law, no constitutional prohibition prevents multiple convictions (and sentences) herein.
The question, then, is whether or not there is a statutory bar under section 775.021(4). That statute, in its reference to "lesser included offenses," draws no distinction between necessarily included offenses and Brown "category four" included offenses  i.e., offenses which may or may not be included in the offense charged, depending on the accusatory pleading and the evidence. The statutory provision was enacted some eight years after the Brown decision, and therefore it is presumed that the Florida Legislature acted with cognizance of the Supreme Court's dual categorization of (necessarily and possibly) lesser included offenses. See Collins Investment Co. v. Metropolitan Dade County, 164 So.2d 806 (Fla. 1964). The question, then, is whether or not the language of section 775.021(4), in its reference to "lesser included offenses" is limited to necessarily included offenses or also includes a lesser offense encompassed by the charging language of the greater offense for which a defendant has been convicted and sentenced. The Florida Supreme Court has not expressly answered this question. Hegstrom, Carlson, Monroe and Thompson concerned necessarily lesser included offenses. Borges concerned offenses which were neither necessary nor category four lesser included offenses.
In the more recent case of Ferguson v. State, 420 So.2d 585 (Fla. 1982), the Florida Supreme Court noted that its result in Borges was predicated on a holding that the crime at issue there (possession of burglary tools) is not a lesser included offense of the higher offense (burglary) "either under the previously-recognized `category four' definition of lesser included offenses, Brown v. State (citation omitted), or under the Schedule of Lesser Included Offenses in the Florida Standard Jury Instructions... ." *40 The implication is clear that a finding that the lesser offense was a Brown "category four" offense would have mandated a different result. It follows that neither the Florida Legislature nor the Florida Supreme Court has restricted the "lesser included offenses" referred to in section 775.021(4) to necessarily lesser included offenses.
Accordingly, the judgment and sentence for murder are affirmed; the judgment of conviction for the second count, use of a firearm in the commission of a felony, is affirmed; and the sentence for the second count is reversed.
AFFIRMED in part; REVERSED in part.
SHARP, J., concurs in result only with opinion.
COWART, J., dissents with opinion.
SHARP, Judge, concurring specially in result only.
I agree with the result reached by Judge Cobb, but I cannot accept the premise in his opinion that a "category four lesser included offense" under no circumstances can constitute prosecution for the same criminal offense for purposes of double jeopardy. U.S. Const. amend. V and XIV; Art. I, § 9, Fla. Const. Judge Cowart also takes this position in his dissent.
In this case the elements for the two crimes charged are different: first degree murder (killing a human being with premeditated intent); and use of a firearm in the commission of a felony. Clearly murder may be accomplished by stabbing, choking, or other means than use of a firearm and murder is not the only felony for which the use of a firearm charge may be brought. But that is only half the story.
Double jeopardy analysis requires a further consideration of whether the essential building blocks of proof of the elements for each offense are essentially the same in any particular case. Here they are the same: Baker shot his wife with a firearm (murder); and Baker shot his wife with the same firearm (use of a firearm in the commission of a felony). Our sister courts have held, without much discussion, that double jeopardy applies in this context. Moore v. State, 414 So.2d 261 (Fla. 1st DCA 1982); Burke v. State, 415 So.2d 753 (Fla. 3d DCA 1982); Pierre v. State, 414 So.2d 30 (Fla. 3d DCA 1982).
Blockburger[1] and Borges[2] speak in terms of elements of crimes in determining distinctness for purposes of double jeopardy.[3] They do not reach the question posed in this case. However, other more recent United States Supreme Court cases have. In Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), the Court held a felony murder conviction barred a subsequent prosecution for robbery where the underlying felony in the prior case was the same robbery. The elements of the two offenses in Harris, as in this case, were not necessarily the same. But where the blocks of proof to establish the elements of each offense are in fact the same, the court ruled that double jeopardy applies.
In Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the court addressed and analyzed a similar situation. There a defendant had been prosecuted and convicted of failing to reduce speed to avoid an automobile accident in which two children were killed. The State sought later to prosecute him for involuntary manslaughter. The court held that depending on the proofs at trial, double jeopardy might bar the manslaughter prosecution.
In any event, it may be that to sustain its manslaughter case the State may find it *41 necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under Brown and our later decision in Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).
* * * * * *
[I]f in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution.
Id. 100 S.Ct. at 2267.
I agree the convictions in this case should be affirmed, but because of double jeopardy, Baker should only be sentenced for the more serious offense. State v. Hegstrom, 401 So.2d 1343 (Fla. 1981).
COWART, Judge, dissenting:
Under what circumstances can a criminal defendant in a single trial be charged, tried and convicted of more than one statutory offense without violating double jeopardy principles? While this question is often recurring, the answer is elusive and often obscured by other legal doctrines. In an attempt to explain the answer and dispel these confusion factors, this opinion is divided into three parts: part one discusses the applicable constitutional analysis to be applied; part two discusses the various confusion factors that have clouded the correct application of the law; and part three applies the law to the instant case.

PART I

THE CORRECT TEST

1. THE CONSTITUTIONAL DOUBLE JEOPARDY CLAUSES:
Ultimately, the answer to the above question must be found in the state and federal constitutions.
Amendment V to the Constitution of the United States provides in part:
... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; (emphasis added)
Article I, Section 9, of the Constitution of the State of Florida provides in part:
no person shall ... be twice put in jeopardy for the same offense,... (emphasis added)

2. "THE SAME OFFENSE"  THE PROBLEM:
Thus, when a criminal defendant is charged with multiple statutory violations in a single prosecution,[1] the constitution bars prosecution of only those charges which are for "the same offense" as another charge. Therefore, the question becomes "when do two separate charges constitute `the same offense?'"[2]

*42 3. "THE SAME OFFENSE"  WHAT DOES "OFFENSE" MEAN?
The word "offense" has two meanings. In one sense, the word "offense" denotes a criminal or penal law which describes prohibited conduct and its punishment, such as a felony, a misdemeanor or infractions subject to punishment. Thus, the legislature creates an "offense" when it enacts a statute providing punishment for defined and prohibited conduct. In this sense, the word "offense" means the law, the authoritarian governmental prohibition for the violation of which a penalty is provided, the statute defining a crime, or, more accurately, a criminal cause of action. This is offense in its law aspect. To distinguish the use of the word in this sense, it will hereafter be referred to as a "statutory offense."[3]
However, the word "offense" also describes, or denotes, the act or the doing of the act which is prohibited by the statutory offense. Thus, it is said that it is an "offense" to do a particular act or that the prosecutor charged that the defendant committed an offense or that the defendant offended against the statute. In this second sense, the word "offense" means the prohibited act or the violation of the statutory prohibition or, again more accurately, one occurrence, in proper combination, of all acts and factual events necessary to accomplish one violation of one statutory offense. This sense of the word "offense" relates to the factual event (or the set of facts violating the statutory offense) and is offense in its factual aspect. To distinguish this sense, it will be referred to as a "factual event." The term "factual offense," while awkward, would be more appropriate.
The word "offense" as used in the constitutional double jeopardy clauses, includes both of these quite different senses. The clauses prohibit two prosecutions of the same statutory offense as to the same factual event but permit two prosecutions of "the same [statutory] offense" as to different factual events and permit two prosecutions of different statutory offenses as to the same factual event. The problem is in understanding and applying these concepts. The inherent ambiguity in the word "offense" and the confusion resulting from the commingling of the legal and the factual aspects of the one word appears to be the underlying reason that the courts are said to be in hopeless and endless conflict when it comes to the solution of the problem of identity of offenses.[4]

4. OFFENSE  THE LAW ASPECT  IDENTITY OF [STATUTORY] OFFENSES  THE BLOCKBURGER TEST:
When is one statutory offense "the same" as another statutory offense? How can one statutory offense be identified and compared with and distinguished from another statutory offense?
Statutory offenses are not properly distinguishable by mere form, i.e., by different names, statutory titles or section numbers in statute books. Instead, statutory offenses are identified and distinguished, in substance, by each statutory offense having different constituent elements. If two statutory offenses have the exact same elements, they are "the same offense" for constitutional double jeopardy purposes, even if those elements are set forth in the statute books twice in different statutes with different titles, different section numbers, and different prescribed punishments.[5]
*43 "The same offense" for double jeopardy purposes does not require that two statutory offenses always have the exact same elements. The constitutional prohibition also includes statutory offenses that contain such common elements that they are, in law, substantially and essentially the same offense. If all of the elements of one statutory offense are included in the elements of a second statutory offense (a crime within a crime), the first is a "lesser included offense" of the second "greater" offense and both are "the same offense" within the double jeopardy clause.
To determine whether any two particular statutory offenses are sufficiently separate and distinctly different as to permit separate criminal charges, prosecutions, trials, convictions and punishments (jeopardy) under the federal and state constitutional double jeopardy clauses, the test is:
ANY TWO PARTICULAR STATUTORY OFFENSES ARE NOT CONSTITUTIONALLY "THE SAME OFFENSE" BUT ARE LEGALLY SEPARATE AND DISTINCT OFFENSES FOR EACH OF WHICH A PERSON CAN BE PUT IN A SEPARATE JEOPARDY IF EACH OF SUCH OFFENSES HAS AT LEAST ONE ESSENTIAL CONSTITUENT ELEMENT THAT THE OTHER OFFENSE DOES NOT HAVE.
In essence, this is what has become known as the "Blockburger test"[6] although, as will be discussed below, the test was not expressed in these terms in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
The Blockburger test, as paraphrased above, primarily determines a constitutional difference between statutory offenses, but it can be used obversely because all statutory offenses that are not "different" under the Blockburger test are the "same" within the constitutional prohibition. So, a converse or alternative test for determining "sameness" of statutory offenses can be stated positively as follows:
WHEN TWO STATUTORY OFFENSES HAVE THE EXACT SAME ESSENTIAL CONSTITUENT ELEMENTS, OR WHEN ONE STATUTORY OFFENSE INCLUDES ALL OF THE ELEMENTS OF THE OTHER, THOSE TWO OFFENSES ARE CONSTITUTIONALLY "THE SAME OFFENSE" AND A PERSON CANNOT BE PUT IN JEOPARDY AS TO BOTH SUCH OFFENSES UNLESS THE TWO OFFENSES ARE BASED ON TWO SEPARATE AND DISTINCTLY DIFFERENT FACTUAL EVENTS.
It is absolutely essential to clearly bear in mind that this is a purely theoretical test made in the abstract by comparing the elements of the two statutory offenses and is properly made academically, completely detached, removed from, and unconnected with any facts in a particular case, whether those facts are alleged in charging documents or are facts necessary or available as proof or evidence at trial.
In summary, any two particular statutory offenses are constitutionally either the same or are different. The Blockburger test is a test for difference and determines that two statutory offenses are separate and distinctly different if each has an element that the other does not have. If two statutory offenses pass the Blockburger test for difference, a person can be prosecuted for both, regardless of the facts upon which the two prosecutions are based. All statutory offenses that do not pass the Blockburger test for "difference" are always the same statutory offense within the double jeopardy prohibition. Statutory offenses *44 which are the same are all included in two groups: (1) those which have the exact same elements and (2) those where a greater offense includes all of the elements of the second, lesser included, offense. A person cannot be prosecuted for both of two statutory offenses that are "the same offense" unless the two prosecutions are based on different factual events.

5. OFFENSE  THE FACTUAL ASPECT  IDENTITY OF FACTUAL EVENTS:
The constitutional double jeopardy clauses do not literally mean that a person can never be twice put in jeopardy for the same statutory offense, for this would mean that a person who had once been put in jeopardy for a particular statutory offense, such as murder, could never again be charged with murder, although at some other time and place he murdered someone else. Therefore, the factual aspect of the word "offense" requires that in cases of multiple charges relating to the same statutory offense (as determined by the Blockburger test) the factual circumstances upon which the multiple similar charges are based must also be examined to ascertain if the multiple theoretically "same offense" charges are based on the same or on different factual events. It is very important to note that the inquiry into factual "sameness" or "difference" is a secondary double jeopardy inquiry that is never reached if the statutory offenses pass the Blockburger test for "difference." This factual inquiry is made, secondarily, only after it has already been determined that the two compared statutory offenses have failed the Blockburger test for difference and are, constitutionally, "the same offense." This factual inquiry must not be confused or commingled with the Blockburger test or its application to the particular statutory offenses in the same case.[7]
Unfortunately, nature does not break facts into units or divisions similar to the way legal concepts divide causes of action into component elements. Therefore, it is unsurprising that there is no recognized test for distinguishing between factual events in the manner that the Blockburger test distinguishes between statutory offenses.
One factual event can be rather easily distinguished from another, even an exactly identical act involving the same objects, if there is a discernible period of time or a notable amount of space between the two acts. If the two acts or factual events are separated by a sufficient period of time, the two acts are considered separate and distinct events; otherwise, they are often generally considered one.[8] Double jeopardy *45 factual problems often relate to whether repeated similar criminal acts, such as fist blows, knife stabbings,[9] firearm shots, or sexual penetrations,[10] constitute one or two or more criminal acts or whether one or multiple acts such as "takings" of property, constitute one, two or more thefts;[11] in these cases time and space differentiations are usually adequate.
However, differentiation by reference to time and space alone is not always adequate for double jeopardy analysis. When one person with one intent places one bomb which blows up one airplane resulting in multiple deaths occurring at the same time and place, each separate death (a factual event proving the death element of every homicide) is prosecutable as a separate violation of "the same [statutory] offense" (murder), even though all of the other factual events proving all other elements of the same offense (murder) are identical. Therefore, even though factual events may occur simultaneously, or in such rapid sequence as to be indistinguishable by usual time and space differentiations, they may be isolated, identified as elemental factual events, and distinguished one from another be reference to the dissimilarities in the nature and quality of the acts or of the objects and results involved, without regard to time and space considerations.
By analogy to the test for theoretical difference in the legal causes of action, a single factual event should be theorized as being the most elemental and minimal fact group necessary to prove one element of a particular statutory offense. Correspondingly, a "factual offense" should be considered to be a single occurrence in proper combination of all such factual events minimally essential to prove one completed violation of the statutory offense. Thus conceived, any two such factual offenses would be considered separate and distinctly different if each factual offense had at least one factual event that the other factual offense did not have.[12] Therefore, the secondary double jeopardy principle relating to different factual events can be stated as follows:
EVEN AS TO MULTIPLE STATUTORY OFFENSES THAT THEORETICALLY CONSTITUTE "THE SAME OFFENSE" WITHIN THE MEANING OF THE DOUBLE JEOPARDY CONSTITUTIONAL CLAUSES, A PERSON MAY BE PUT IN JEOPARDY AS TO TWO OR MORE CRIMINAL CHARGES OR PROSECUTIONS IF EACH SUCH CHARGE IS BASED ON A SEPARATE AND DISTINCTLY DIFFERENT FACTUAL EVENT.

6. THE CORRECT INQUIRY AS TO "THE SAME OFFENSE":
Two criminal prosecutions can be based on statutory offenses which are, for double jeopardy purposes, either the same or different, depending on whether they pass the Blockburger test. Furthermore, two prosecutions can be based on the same factual event or on two different events. Therefore, four combinations of these two variables are possible.
(1) If the proposed prosecution or punishment is based on a different statutory offense and a different factual event from that involved in a prior, or another, *46 prosecution, double jeopardy does not bar the proposed prosecution or punishment.
(2) If the proposed prosecution or punishment is based on a different statutory offense from, but the same factual event as, that involved in a prior, or another prosecution, double jeopardy does not bar the proposed prosecution or punishment.[13]
(3) If the proposed prosecution or punishment is based on the same statutory offense as, but a different factual event from, that involved in a prior, or another prosecution, double jeopardy does not bar the proposed prosecution or punishment.[14]
(4) Only where the proposed prosecution or punishment is based on both the same statutory offense and the same factual event as that involved in a prior, or another, prosecution does double jeopardy bar both the proposed prosecution and punishment.
Therefore, "the same offense," as that term is used in connection with double jeopardy, means a second prosecution for the same "offense," both in law and in fact, on which the first prosecution was based.
This would seem to suggest that the correct inquiry as to "the same offense" for double jeopardy purposes would always require two parallel independent inquiries, one a Blockburger elements comparison to determine the singleness or separateness of the two statutory offenses and the other an inquiry into the singleness or separateness of the factual event or transaction. This is not correct because, as discussed above, double jeopardy bars a second prosecution only when it is based both legally on "the same [statutory] offense," and factually, on the same event, as was involved in the first, or other, prosecution. Therefore, if the second proposed prosecution is based either on a substantially different statutory offense (according to the Blockburger test), or on a different factual event, double jeopardy does not bar the second prosecution. It is either/or as to the law or the facts. Consequently, the inquiry into the separateness of the factual transaction need only be made after it is first determined that two prosecutions, successive or simultaneous, are based on the same statutory offense, i.e., statutory offenses that fail the Blockburger test for distinctness.
When the inquiry is whether a particular proposed prosecution or punishment is based on "the same offense" as was involved in a prior prosecution or is involved in another pending prosecution (whether in a separate charging document or a separate count in the same charging document) and is for that reason barred by the double jeopardy clauses of the state and federal constitutions, the following steps should be taken:[15]
1. The constituent elements of the statutory offense involved in the prior, or other, prosecution should be carefully listed.[16]
*47 2. The constituent elements of the statutory offense in the proposed prosecution should be carefully listed.
3. The constituent elements of the two statutory offenses in question should be carefully compared and analyzed as follows:
(a) If the comparison discloses that each statutory offense has no elements in common with the other statutory offense or each statutory offense has at least one element that the other statutory offense does not have, the Blockburger test is passed, the statutory offenses are legally distinctly different and are not "the same offense" for double jeopardy purposes. Each statutory offense will support a separate prosecution, trial, conviction and punishment, even if the accused's acts charged as violating both statutory offenses resulted from the same criminal act or arose out of the same factual event (the same transaction).
(b) If the comparison discloses that both statutory offenses have the exact same elements, then they are "the same offense," even if the elements are set forth in statutes with different titles and numbers, and double jeopardy bars the proposed prosecution, unless it is based on an entirely different factual event than was involved in the prior, or other, prosecution.
(c) If the comparison discloses that all of the elements of one offense are included in the elements of the other offense, then the first offense is a ("necessarily") lesser included statutory offense of the other (greater) statutory offense. Double jeopardy bars a prosecution, trial, conviction or sentence for both unless one is based on an entirely different factual event than was involved in the other.
In its ultimate statement the conceptual answer to the double jeopardy identity of offense problem is simple. Regardless of the facts, a person can always be prosecuted on charges based on statutory offenses which are "different" (as determined by the Blockburger test). Even as to statutory offenses that are the "same" (as determined by the Blockburger test), a person can be prosecuted without limit, so long as each charge is based on a different factual event. Unfortunately, the simplicity of this concept and a correct application of the Blockburger test has been obfuscated by collateral legal doctrines.

PART II

7. DIFFICULTIES IN APPLYING THE CORRECT TEST:
The validity of the Blockburger test is that it contemplates (1) that the substance of a criminal offense is not its form, style, name, section number or the punishment its violation authorizes, but is its constituent essential elements, (2) that a difference in elements is what, in substance, identifies and distinguishes one offense from another, and (3) that the test requires that for any two offenses to be constitutionally separate and distinct, each (that is, both of such offenses, not just one of them) must have at least one essential element that the other offense does not. This test was ingeniously conceived, is theoretically sound and can be simply stated, but has been extensively confused in its definition and application. The difficulty in the application of the Blockburger test does not arise from any fallacy in its concept, but is caused by:
(1) infirmities in traditional definitions and statements of the test, which have resulted in the test, and its application to distinguish between statutory offenses, being misunderstood and confused with the secondary double jeopardy inquiry relating to distinctions between factual events;
(2) confusion with four somewhat related concepts:
(a) the "single transaction rule,"
(b) concepts involving jury verdict alternatives, described as categories three and four in Brown v. State, 206 So.2d 377 (Fla. 1968),

*48 (c) the exception for lesser included offenses in section 775.021(4), Florida Statutes (1981), and
(d) confusion of jeopardy as to punishment with jeopardy as to prosecution; and
(3) failure to recognize certain limitations which are inherent in the nature of the test itself.
These matters are considered below.

8. INFIRMITIES IN TRADITIONAL DEFINITIONS AND STATEMENTS OF THE BLOCKBURGER TEST  CONFUSION OF THE TEST FOR THEORETICAL DIFFERENCE BETWEEN STATUTORY OFFENSES WITH ACTUAL DIFFERENCE BETWEEN FACTUAL EVENTS:
The Blockburger test is used to compare the theoretical elements of statutory offenses. It is not concerned with the evidence presented to prove those elements in a particular case. While unfortunate phraseology in United States Supreme Court opinions has been read as support for the opposite conclusion, a careful analysis of those rulings and of the test itself establishes that actual evidence in a given case is irrelevant to a correct application of the test.
The particular constitutional analysis known as the Blockburger test actually predates the Blockburger case. Prior cases emphasized that the test is to be applied to statutory elements and not facts. Ex Parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), states the same principle as Blockburger, but in different language.[17] Similarly, in Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), appellant was charged, convicted, and sentenced for violating a statute prohibiting the threatening or insulting of a public official, after previously being convicted of violating a public drunkenness ordinance. In affirming the separate convictions, the supreme court noted that, although the two separate charges were premised on proof of the same conduct, each codified provision required some element be proved that the other provision did not; the statute required an "insult to a public official," while the ordinance required the offense be committed "in a public place, open to public view." 220 U.S. at 343, 31 S.Ct. at 423.
Blockburger itself makes the above distinction. Blockburger was charged with selling prescription drugs other than from the original stamped package and with selling those same drugs without a prescription. The court held that these were not "the same offense," notwithstanding that both violations were premised upon a single sale, because each statute, in the abstract, contained an element that the other did not. Although the oft quoted test[18] in Blockburger speaks in terms of "proof of facts," the opinion applies the test to the statutes, and not to the pleading or to the proof.[19]
Blockburger defined separate and distinct offenses as those, each of which requires "proof of a fact" that the other does not *49 because, generally, proof of each separate element requires proof of some additional fact. Unfortunately, this language focused attention toward the evidentiary facts of the given case that served to prove the elements of the offense in the particular case and focused attention away from an academic comparison of the elements of the particular offenses, which elements are ultimate facts or theoretical building blocks which the legislature combines to fashion and create a criminal cause of action or offense.
Cases subsequent to Blockburger have likewise clarified the fact that the correct analysis compares the statutes, and not proof at trial. The United States Supreme Court in Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980), recently said:
In Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), we stated the principal test for determining whether two offenses are the same for purposes of barring successive prosecutions. Quoting from Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which in turn relied on Gavieres v. United States, 220 U.S. 338, 342-343, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911), we held that:
`The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'

Brown v. Ohio, 432 U.S., at 166, 97 S.Ct., at 2225.
We recognized that the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. Thus we stated that if `each statute requires proof of an additional fact which the other does not,' Morey v. Commonwealth, 108 Mass. 433, 434 (1871), the offenses are not the same under the Blockburger test. Brown v. Ohio, 432 U.S., at 166, 97 S.Ct. at 2226 (emphasis supplied); Ianelli v. United States, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975).[6] (emphasis added)
[6] In Ianelli v. United States, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975), we stated that "the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." (emphasis added)
Although the above quote from Illinois v. Vitale states that the test "focuses on the proof necessary to prove the statutory elements" of the offense, it is clear that the court's use of the term "proof" refers to proof in the abstract, i.e., statutory elements. This is borne out by the court's contrasting "proof" ("necessary to prove statutory elements") with, and distinguishing it from, "the actual evidence to be presented at trial." This is further substantiated by the footnote reference to the quote from Ianelli, emphasizing that "the test focuses on the statutory elements of the offense."
Certain language in Harris v. Oklahoma, 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977), does not at first reading appear to jibe with the test in Blockburger, but an examination of the facts in the cases cited in Harris reveals no conflict. In Harris, the supreme court held that a defendant could not be convicted of both felony murder and the underlying felony because the underlying felony was an "incident" of the felony murder. Harris relies on, and uses earlier terminology from, Ex Parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). The Nielsen opinion refers to "a crime which has various incidents included in it" and holds that adultery was an "ingredient" of polygamy and Nielsen's earlier conviction of polygamy barred his subsequent conviction and punishment for adultery. The word "incident"[20] as it was *50 used in Ex Parte Nielsen, meant a lesser crime, such as adultery, rather than a mere single constituent element of a greater offense which might not itself constitute a separate crime. In Harris v. Oklahoma, Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and Ex Parte Nielsen, all elements of the lesser crime were included within the greater crime. In Ex Parte Nielsen it was held that adultery was an "incident" in, i.e., a lesser included offense of, the greater or former conviction of polygamy. In Brown v. Ohio, it is clear that Brown's conviction of joyriding was a necessarily lesser included offense of auto theft. Finally, in Harris v. Oklahoma, the court made a point of the fact that the state had conceded that all of the "ingredients" (elements) of the underlying felony of robbery with a firearm were necessary in proof of the greater felony of murder.
The above authority therefore holds that two statutory offenses are not "the same offense" for double jeopardy purposes if each requires proof of an additional fact which the other does not. This means that two statutory offenses are essentially independent and distinct if each offense can possibly be committed without necessarily committing the other offense. This is just a poor way of saying that the test is an abstract test and that two statutory offenses are not "the same offense" if each statutory offense has at least one constituent element that the other does not. However, by expressing the rule in terms of "proof of a fact" and "necessary to prove the statutory elements" these quotes misdirect attention away from a theoretical comparison of "the statutory elements of each offense" and toward the facts or proof or pleading allegation or the factual aspect of the meaning of the word "offense." This has caused many Florida cases[21] to erroneously focus primarily or solely on allegations and proof relating to criminal acts and transactions.
The result of this poor definition is that a proper analysis and comparison of the elements of criminal offenses under the Blockburger test for determining the sameness or separateness of multiple offenses for double jeopardy purposes is often confused and commingled with an analysis of the evidentiary facts in the particular case. Analysis of the facts is necessary and proper, but only for the purpose of determining whether multiple criminal charges based on criminal causes of action (offenses) which are constitutionally the same under the Blockburger test are nevertheless based on separate and distinct factual events and are, therefore, permissible double prosecutions. This difficulty is the greatest source of confusion and error in double jeopardy cases generally and in Florida.

9. FLORIDA CONCEPTS OBSCURING A PROPER DOUBLE JEOPARDY ANALYSIS:

9A. THE CONTINUING INFLUENCE OF THE ABROGATED "SINGLE TRANSACTION RULE":
When the legislature creates a separate and distinct offense, it can reasonably be assumed that it was intended that each offense stand as a deterrent to that specific behavior and that, for that purpose, the legislature intended the violation of each offense to be subject to the deterring effect of a separate punishment. This being a strong legislative prerogative, the judiciary should uphold this legislative intent when it does not exceed constitutional limitations. However, contrary to this view, long ago[22] *51 the Florida judiciary created or recognized a rule of law, called the "single transaction rule." This rule, although based on no statutory or constitutional constraint, served to limit punishment for two or more statutory offenses committed or occurring as parts or "facets" of a single criminal transaction or episode to but one sentence. Thus, where several crimes were committed in one continuing episode or crime spree, the State could prosecute and obtain convictions on all crimes committed; however, the defendant could only be sentenced on one: the crime authorizing the greatest punishment.
Notwithstanding that respectable judicial authority rationalized and acclaimed the rule,[23] it was an ill-conceived rule which was violative of legislative intent and demeaning of constitutional authority. It accustomed the judiciary to conceptual thinking which (1) limited legislatively authorized sentencing for reasons other than constitutional restraints, (2) focused legal analysis for that purpose on the charging document and the evidence of facts, rather than on the substantive differences between statutory offenses, (3) confused and substituted a classification of crimes based on a criminal transaction or episode and on maximum punishment, rather than on a proper constitutional double jeopardy analysis and comparison of the constituent elements of the compared offenses and (4) sired the Brown v. State concept of category four lesser included offenses which clouds current criminal jurisprudence in the State of Florida.
The legislature specifically repudiated and abolished the "single transaction rule" by the enactment, effective October 1, 1976, of section 775.021(4), Florida Statutes (1981):
Whoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed during said criminal episode, and the sentencing judge may order the sentences to be served concurrently or consecutively.
This statute clearly and explicitly evidences a legislative intent to punish cumulatively, directs separate sentences for the violation of two or more separate statutory offenses in one criminal transaction or episode and authorizes consecutive sentences.[24]
The "single transaction rule" is gone but, unfortunately, not forgotten. Its spectre lurks in the rationale of cases decided daily and can usually be recognized by references to "the same transaction" and phrases such as "these offenses were facets of the same criminal transaction or episode."[25] The remnants of this philosophy have haunted courts, causing them to ignore a proper Blockburger analysis and to emphasize instead the facts of the particular case.
The irrationality of using single transaction rule concepts to implement double jeopardy protections was recognized by *52 Judge William C. Owen, Jr., in State v. Conrad, 243 So.2d 174, 176 (Fla. 4th DCA 1971), when he wrote:
Whatever else the Ashe [v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469] case stands for, it does not mean that separate and distinct offenses arising out of a criminal frolic or transaction amount to the "same offense" within the constitutional guarantee against double jeopardy. The absurdity of the "same transaction" standard can be easily illustrated. Assume that one breaks and enters a building to commit larceny of an automobile, does thereafter in fact steal the automobile and drive away, killing the night watchman in the process, and two blocks away runs a red light which brings about his arrest by the municipal police. Could it be said with any logic that a plea of guilty to breaking and entering would bar a subsequent prosecution for murder? If so, presumably a plea of guilty to the traffic offense would likewise, since all arise out of the "same transaction".

9B. "LESSER INCLUDED OFFENSES" AS JURY VERDICT ALTERNATIVES  BROWN V. STATE:
Apart from being used in the double jeopardy context to describe a crime, all of whose elements are included in another, the term "lesser included offense" has unfortunately been used to describe an offense all of the elements of which are in a charging document, when some or all of those elements are not elements of the crime charged.
Brown v. State, 206 So.2d 377 (Fla. 1968), held that for the purpose of alternative jury verdicts (not double jeopardy concepts) lesser included offenses can be classified into four types, two of which are: (category three) lesser offenses necessarily included in the definition of a greater offense and (category four) those created by adding allegations to the accusatory pleading which, while not essential to a correct definition of the greater offense, supplement allegations of the greater offense to also include all the elements that are essential to a complete definition of another ("lesser") offense.
Necessarily included lesser offenses (Brown v. State category three) occur when all essential elements of the lesser offense are also essential elements of the greater crime (where one crime includes another  "a crime within a crime"). Thus, necessarily included lesser offenses exist as a matter of law, are determinable from a comparison of the elements of each crime[26] (as Blockburger directs) and not from a comparison of the allegations of the charging document or the facts in the particular case.
By contrast, permissibly included lesser offenses (Brown v. State category four) are created by combining into one count of a charging document allegations of facts relating to the elements of two or more different statutory offenses and presenting supporting proof at trial as to the additional elements in the "lesser" offense. While this can be intentionally done by the pleader to provide verdict alternatives, it can result unavoidably from adding additional facts to allegations of the necessary elements of the basic greater offense, either for the purpose of required specificity or for the purpose of enhancing punishment for the basic greater offense. This often occurs when assaultive conduct is alleged to have accompanied a property offense or when a harmful object (weapon or firearm) is used to accomplish an assault type offense, or, when murder (as in this very case), burglary, robbery or sexual battery is alleged to have been attempted or accomplished by use of a firearm or other weapon. This causes or creates most double jeopardy cases involving identity or distinctness of offenses problems.[27]
*53 The greater-lesser included offense concept involved in the law relating to the trial judge giving jury instructions and verdict alternatives to juries in criminal cases is often confused with the greater-lesser included offense concept involved in the double jeopardy problem. The similarity of nomenclature and subject matter makes confusion understandable, but these two legal concepts evolved as solutions to entirely different problems arising from grossly different rights based on vastly different sources of authority. The "lesser included offense" concept, as applied to jury verdict alternatives, came as the solution to a problem involved in implementing the nonconstitutional right of an accused to a jury instruction giving the jury an opportunity to find the accused guilty of an offense lesser in severity of punishment than that with which he was charged. This right was an incident of the "single transaction rule" and was originally based on section 919.16, Florida Statutes, but was later embodied in Florida Rule of Criminal Procedure 3.510, which rule was amended, effective October 1, 1981. In contrast, the "lesser included offense" concept in the double jeopardy context is involved in the problem of distinguishing offenses to protect an accused from multiple prosecutions for "the same offense." Brown v. State related only to the jury instruction problem and did not mention, and was never even remotely intended to relate to, the constitutional double jeopardy/lesser included offense problem. The constitutional double jeopardy/identity of statutory offenses problem would remain even if Florida Rule of Criminal Procedure 3.510 were abolished and the accused had no right to have the jury given a verdict alternative to finding the accused either guilty as charged or not guilty. These are separate and distinct problems and the nature of the underlying rights they effectuate directs that the law relating to the jury instructions rule right not be misapplied by the courts to thwart the constitutional right of the legislature to enact legally separate and distinct statutory offenses, for the violation of each of which a citizen should be subject to a separate conviction and punishment.
Brown's category four introduced ambiguity into the terms "lesser" and "included." First, the category four offense is not "lesser" in the proper sense that it contains some, but a lesser number of, the same elements contained in the greater offense. Instead, the category four offense is "lesser" in the sense that it carries a lesser punishment than the greater offense.[28] Next, the category four offense is not "included" in the greater offense in the proper sense that all of its elements are included within the elements of the greater offense. Instead, the allegations as to the category four offense are "included" in the same count with the allegations of the greater offense. Thus, it is clear that the meaning of "lesser included offense," in the category four sense of those terms, is completely unrelated to double jeopardy analysis. Attributing category four connotations to the term "lesser included offenses" in double jeopardy analysis results in an improper consideration of the severity of punishment and the factual allegations in charging document, rather than on the elements of the statute offense.
Under the jury verdict alternative concept, the idea of a greater offense is one permitting a more severe punishment than the lesser offense, but for double jeopardy purposes the term "greater" offense means only, of two statutory offenses related by common elements, the one with the greater number of constituent elements than the *54 lesser offense. It is true that, as a practical matter, this is usually a meaningless difference because when crimes are built (building block style) on some of the same elements, the offense that has the greater number of elements usually carries the greater penalty. Nevertheless, the distinction in meanings must be kept in mind when analyzing and comparing offenses for double jeopardy purposes or flawed reasoning results and a comparison of the severity of punishments will be substituted for a comparison of the elements of the statutory offenses.[29]
A greater offense and a permissible lesser included offense usually have common elements, but this is not essential, according to the Brown v. State definition of category four lesser included offenses. The relationship between the greater crime and the permissibly lesser included offense does not depend on any particular commonality of, or difference between, the elements of the two offenses, but depends entirely on blending into one count allegations of facts relating to the elements of two or more statutory offenses and the evidence at trial. As a practical matter, the relationship between the greater offense and the Brown v. State category four (permissibly) lesser included offense is that both offenses usually have occurred, time and spacewise, factually in the "same transaction,"[30] as that term is variously conceived.[31] Thus, permissibly lesser included offenses are not, in law, true lesser included offenses. Since the relationship between a greater offense and a permissibly lesser included offense depends only on pleading techniques and proof, and not on the law, this relationship constitutes no logical basis upon which to distinguish between offenses for the purpose of determining if they are constitutionally "the same offense."[32] This is why, when the double jeopardy inquiry is whether there are one or two distinct legal offenses involved (as distinguished from the questions of whether there are one or two different factual events), comparison of the elements of each of the statutory offenses should be made, rather than a comparison of the wording of the charging documents and the evidence in the particular case.[33]
Brown introduced another ambiguity by creating another type of "lesser included offense." In general criminal law jurisprudence, the term "lesser included offense" means an offense, all of the elements of which are included in a greater offense; this is what it means under the Blockburger test. However, Brown v. State took that simple concept, called it a category three "necessarily lesser included offense" and then, with bootstrap logic, deducted from *55 the adjective "necessarily" (which was actually redundant) that there must be another class or group of lesser included offenses, which were not "necessarily included," i.e., category four "permissibly" lesser included offenses.
Category three lesser included offenses are those offenses, all of whose statutory elements are included in the statutory elements of the crime charged. Therefore, by definition, under the Blockburger test a category three lesser included offense will always be "the same offense" as the crime charged. In contrast, category four permissible lesser included offenses are created by adding allegations relating to elements of a separate offense which are not included within the elements of the crime charged. Consequently, such permissive lesser included offenses will always contain at least one element not contained in the crime charged and the crime charged will always contain at least one element not contained within the category four offense. Therefore, category four crimes, by definition, always pass the Blockburger test for distinctness permitting separate prosecutions and never constitute "the same offense" for double jeopardy purposes.[34]
The fallacy of applying Brown jury verdict alternative concepts to double jeopardy is illustrated by procedural problems inherent in doing so. When the double jeopardy question is presented by a subsequent prosecution after a former jeopardy, the factual event and the statutory offense involved in the former prosecution must be compared with the factual event and the statutory offense involved in the second prosecution before the second trial. Likewise, when the double jeopardy question is presented by two or more counts in one charging document, or by two or more charging documents that have been consolidated for one trial, a Blockburger comparison of the elements of the two statutory offenses can be made before trial. In either event, since the very purpose of the double jeopardy clause is to protect one from a second jeopardy by barring the second prosecution and trial, the assertion of that right is expected to be made by pretrial motion to dismiss the second charging document (or second count in the one charging document), Fla.R. Crim.P. 3.190(b), although the fundamental nature of this right is recognized by an exception permitting the court to entertain the motion at any time.[35] Fla.R.Crim.P. 3.190(c)(2).
On the other hand, the Brown alternative jury verdict rule right must be asserted after the evidentiary portion of the trial (at the close of all the evidence), Fla.R.Crim.P. 3.390(a), by a request that the court instruct the jury as to lesser included offenses under Florida Rule of Criminal Procedure 3.510, or that right is waived. Fla.R.Crim.P. 3.390(d). However, at that moment in a trial, jeopardy as to the second prosecution has already attached. The Brown v. State definition of a category four lesser included offense requires not only certain allegations but also evidence at trial which, obviously, cannot properly be part of the double jeopardy concept, which was designed to bar a second trial for the same offense.

9C. BROWN v. STATE AND THE SINGLE TRANSACTION RULE: THEIR COMBINED EFFECT ON DOUBLE JEOPARDY  SECTION 775.021(4), FLORIDA STATUTES.
Category four lesser included offenses served some purpose while the single transaction *56 rule was still in effect. Under the single transaction rule, a defendant could be sentenced for only the "most serious" of several crimes committed during the course of one factual episode. In those circumstances, it was reasoned that the State might as well add the allegations of the category four "lesser" crimes (although they were legally distinctly different statutory offenses) to the factual allegations of the most serious offense included in the same transaction and thereby let the jury find, in the alternative, guilt as to that one most serious of the various offenses that the State had proved beyond a reasonable doubt.[36]
The elements of the category four lesser offense were not included in the elements of the greater offense, but were considered to have occurred in the same factual transaction in which the greater offense occurred. Under the "single transaction rule," this was conceived to bar, not a second trial or conviction, but only a sentence (punishment) for the category four offense separate from the sentence for the greater offense.[37] Thus, the category four offense concept and the "single transaction rule" were used together to form and implement a concept which limited the punishment for violation of multiple statutory offenses occurring during one criminal transaction to one sentence per transaction. However, this judicially conceived rule restricted the legislative intent that each crime incur a separate deterring punishment far more than is required by the constitutional double jeopardy clause. By limiting punishment to one sentence imposed on the most serious of several crimes committed during a single episode, regardless of the fact that the several crimes might be constitutionally distinct and separate offenses, the single transaction rule engulfed double jeopardy protections. Courts applying the single transaction rule to limit punishment to one sentence never reached the double jeopardy question involved in imposing multiple sentences.[38]
With the advent of section 775.021(4), the legislature specifically repudiated the single transaction rule. The legislative intent of section 775.021(4) was that each violation of each separate statutory offense be punishable by a separate sentence. The only exception to the above is "lesser included offenses." If this exception were construed to apply to Brown category four offenses, the effect of the statute would be to reimpose the single transaction rule, a result which is anathema to the legislative intent. The exception applies only to those lesser offenses which, as a matter of law, are always included in a greater offense *57 charged. These offenses are those which, constitutionally, are "the same offense" as the offense charged, and incidentally correspond to Brown's category three. The Florida Supreme Court has recognized the error of confusing the abrogated single transaction rule with double jeopardy in its most recent cases on the subject. See, e.g., Ferguson v. State, 420 So.2d 585 (Fla. 1982); Borges v. State, 415 So.2d 1265 (Fla. 1982).
With the single transaction rule gone, the only logical reason for Brown v. State category four offenses also disappeared and that category concept should have been quickly judicially repudiated and buried. To the contrary, however, the perceived importance of the category four concept has, if anything, been enhanced by the action of the Supreme Court of Florida in having an official list of category four lesser included offenses compiled and published.[39] Thus, the spirit of the old single transaction rule lives on, influences mistaken applications of the constitutional double jeopardy clause and causes an erroneous construction of the exception in section 775.021(4) relating to lesser included offenses to also include the psuedo-lesser included offense described as category four in Brown v. State. The effect of this is to reimpose the single transaction rule[40] when the very purpose of the statute was to abolish that rule.

9D. APPLICATION OF DOUBLE JEOPARDY ONLY TO PUNISHMENT OR SUCCESSIVE PROSECUTIONS AND NOT DOUBLE CONVICTIONS IN A SINGLE TRIAL.
As a matter of concept and definition "jeopardy" in the double jeopardy context has always been recognized to relate to the hazards of trial and to the risk of possible convictions that goes with the prosecution of criminal charges.[41] If it bars two prosecutions or trials for "the same offense" it bars two convictions. If it bars two convictions it certainly bars two sentences. Therefore, normally no question of the application of double jeopardy to two sentences (or double punishment) for the same offense can arise. In the exceptional situation where a defendant has successfully challenged the legality of his first conviction, the question may be presented as to whether on resentencing constitutional provisions prohibit a more severe sentence than was first imposed. The United States Supreme Court addressed that question in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), holding that while double jeopardy does not prohibit the second trial and conviction or the imposition of an otherwise lawful single punishment, the due process clause limits the possibility of greater punishment after the second conviction, to prevent its threat from dissuading the pursuit of the legal right to appeal an erroneous conviction. Pearce did not involve an identity of offense problem but related to an exceptional situation involving authorized successive prosecutions for the same offense and was decided on due process, and not double jeopardy, grounds. In a similar way Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), actually avoided any identity of offense double jeopardy problem (involving felony murder and the underlying felony) by finding a congressional intent *58 to not impose cumulative punishments at a single criminal proceeding. 445 U.S. at 693, 100 S.Ct. at 1439. Since the majority in Whalen rejected the petitioner's statutory interpretation claim it did not reach the constitutional issue presented there and in State v. Pinder, 375 So.2d 836 (Fla. 1976). Whalen did cite dicta from Pearce and the Florida Supreme Court quoted it from Whalen in State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). The quoted statement is accurate in saying that double jeopardy protects "not only against a second trial for the same offense, but also `against multiple punishments for the same offense.'" This statement recognizes that double jeopardy protects from both second (or multiple) trials and, in some exceptional circumstances, also second (or multiple) punishments for "the same offense." However, language in Hegstrom becomes a problem when it converts the conjunctive "and" into a disjunctive "or" and says that "double jeopardy seeks only to prevent courts either from allowing multiple prosecutions or from imposing multiple punishments for a single, legislatively defined offense." This and other language in Hegstrom cannot, consistent with federal constitutional holdings, be construed to hold that constitutional double jeopardy permits a defendant to be twice tried for what is under the Blockburger test "the same offense" either in successive trials or in a single trial (as different counts in one charging document or as charged in different charging documents and consolidated for trial) so long as two punishments are not imposed. Pinder concluded that double jeopardy bars a conviction of both felony murder and the underlying felony. See section 10(c) below. Contrary to Hegstrom's conclusion, Pinder did not err in applying to a single trial setting rationale from cases involving successive prosecutions but relating to the double jeopardy problem of identity of offenses. As to the identity of offenses double jeopardy problem, the difference between two prosecutions for "the same offense" in successive (tandem) trials or in one (dual) trial is immaterial. The Blockburger case itself was a single trial of a five count information. Likewise Whalen's felony murder and rape charges were tried together and Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), involved a single trial of a two count information. The legal difference in these cases is that, when properly tested, the offenses in Blockburger and in Albernaz were found to be substantively different. Thus those cases upheld convictions for each offense alleged in each count although these offenses had some commonality in their elements or in their alleged facts, while Pinder found the offense of felony murder and the offense of the underlying felony to be substantively the same. This does not mean Blockburger and Albernaz would not have held that double jeopardy barred double convictions had the offenses there involved failed the Blockburger test and had therefore been found to be constitutionally "the same offense." Neither Whalen nor Albernaz nor any other case from the United States Supreme Court holds that constitutional double jeopardy does not apply to bar trials and convictions that put a defendant twice in jeopardy for the same offense or that double jeopardy applies only to same offenses in successive prosecutions. The misunderstood language from Brown v. Ohio means that when offenses which do pass the Blockburger test for substantive difference are tried in a single criminal trial and the substantive law of the jurisdiction prohibits multiple sentences on certain multiple convictions,[42] or *59 upon resentencing after retrial as in Pearce, then double jeopardy guarantees may apply to bar multiple sentences. The constitutional guarantee against double jeopardy is too substantive and too fundamental to relate only to sentencing following trial and conviction or alternatively to the conviction or sentence. Neither can the prosecution be permitted to so easily circumvent this constitutional protection by simply joining for one trial multiple charges as to offenses what are in substance "the same offense." May the prosecution do in one trial what it is prohibited from doing in two trials?

10. INHERENT LIMITATIONS ON THE BLOCKBURGER TEST:
Although the test that has come to be known as the Blockburger test contains no explicit exceptions or scope limitations within itself, careful analysis and thoughtful consideration will reveal that there are certain inherent limitations on the ability of the test to accomplish its intended purpose, when applied to a certain few offenses. Rather than distorting the true nature of those offenses or twisting and torturing the Blockburger test to accommodate them, these instances should be openly recognized and classified as exceptions to the general test and carefully individually considered for double jeopardy purposes.
The Blockburger test contemplates the usual, normal, criminal offenses which are composed of a usual group of definite elements involving in some proper combination certain persons, objects, acts, mental intents, conditions, circumstances and relationships. For example, the elements of robbery, burglary and aggravated assault can be easily isolated and listed and compared with those of similar crimes. However, some offenses, as a matter of substantive law, bear a special relationship to each other different in kind from the relationship between ordinary offenses. These peculiar relationships thwart the Blockburger test and require that these offenses be considered as exceptions to that test. Three of these special offenses are:
10A. Attempts: The offense of an attempt to commit a crime bears a peculiar relationship to the offense attempted. Contrary to the assumptions inherently contemplated by the Blockburger test, attempts are not composed of traditional elements, easily recognized and distinguished. An attempt to commit any crime is composed of the same three elements, being (1) the specific intent to commit the crime attempted, (2) any overt act reasonably calculated to accomplish the commission of the offense intended and (3) failure to complete the crime intended. § 777.04(1), Fla. Stat. (1981).
If an attempt and the offense attempted were compared under Blockburger, they would be considered to be separate offenses, and thus an accused could theoretically be convicted of, and sentenced for, both the attempt and the offense attempted. As a matter of substantive law, though, an accused may not be convicted of both because it is a logical impossibility to commit both a completed crime and an attempt to commit that same crime. This is so because an element of an attempt is the failure to complete the crime attempted, while conviction of the crime attempted requires success in committing the crime. Because of this mutually exclusive relationship between an attempt and the crime attempted, the crimes are considered to be "the same offense" for double jeopardy purposes notwithstanding the result of a Blockburger test.
The Blockburger test also cannot be applied to distinguish an attempt from an offense other than the offense attempted (including other attempts). The second or "act" element of an attempt is always defined the same, regardless of the crime attempted, and cannot be theoretically distinguished, *60 in law, from any other "act" element of any other offense. Moreover, the overt act required in an attempt is itself too vague and indistinct to be isolated and distinguished as a factual event different from other factual events which might themselves be other offenses or elements of other offenses. For these reasons, the Blockburger test, which necessitates the comparison of specific, recognizable and distinguishable elements, is inadequate to distinguish the offense of an attempt from other offenses for double jeopardy purposes. Since an attempt contains elements not included in the specific crime attempted, to suggest that for Blockburger test purposes the offense of an attempt merely be considered to have the same elements as the crime attempted is artificial and incorrect and provides no solution. Fortunately, this problem is seldom encountered because often a jury verdict finding guilt of an attempt as a lesser verdict alternative constitutes an implied acquittal as to the crime intended and all of its necessarily lesser included offenses, which acquittal will be sufficient to protect from a subsequent prosecution for those same offenses as determined by the Blockburger test. The double jeopardy problem with an attempt only arises (1) where the crime attempted was not also charged and the attempt was a crime specifically charged or (2) upon a plea to an attempt where there is no express waiver that precludes the double jeopardy problem.
10B. Degree Crimes: The different degrees of a degree crime bear a peculiar relationship to each other. Degrees within a degree crime generally have several elements in common. For example, all degrees of murder require that the accused cause the death of the victim. The remaining elements of the various degrees are stated in the alternative and serve to categorize the crime. The various degrees of murder are classified according to the accused's mental intent, the mental intent of each degree being exclusive to that degree. Because the various degrees contain this mutually exclusive element, they would be considered discrete crimes under Blockburger. This same mutually exclusive element, however, makes it logically impossible to commit more than one degree crime as to one death. Therefore, like attempts and the crime attempted, degrees of a degree crime must be considered to be "the same offense" for double jeopardy purposes not because they fail the Blockburger test but because of their mutually exclusive relationship.
A special exception to Blockburger is also involved when comparing a degree crime with any other crime. Because one charged with one degree of a degree crime is considered to also have been charged with all lesser degrees of that crime, when comparing one degree of a degree crime with another crime, the elements of the other crime would not only have to be compared with the elements of the degree actually charged, but would also require a simultaneous comparison to all elements of all lesser degrees. The Blockburger test is not up to this task.
10C. Felony Murder: Felony murder is a death caused by the perpetration, or the attempt to perpetrate, a felony. § 782.04, Fla. Stat. (1981). Therefore, the felony murder statute has an alternative element that is satisfied by proof of either the completed underlying felony or the attempt to commit that felony. Additionally, the crime is classified into degrees, by the type of the underlying felony and by whether the killing was accomplished by the act of a perpetrator or by another. Thus, felony murder has the attributes of both attempt crimes and degree crimes which confound the Blockburger test.
When comparing degrees of felony murder with one another for double jeopardy purposes, the above analysis of degree crimes applies. Like other degree crimes, degrees of felony murder will pass the Blockburger test for distinctness, even though substantively they are considered "the same offense." This is because the mutually exclusive alternative elements make it impossible for two degrees to be committed by the same act. Thus, use of the Blockburger test should not be attempted *61 to compare felony murder with offenses other than the underlying felony.
However, when comparing felony murder with the underlying felony, the Blockburger test is effective, despite the existence of an attempt as an alternative element of the crime. Although, as noted above, the elements of attempts cannot be isolated and compared under the Blockburger analysis, the attempt may be considered in gross, because the entire attempt is an alternative element of felony murder. Thus, the attempt is a necessarily lesser included offense of the felony murder. Likewise, the completed crime, being in gross an alternative element of felony murder, is wholly included in felony murder. Thus, the underlying completed felony is also a necessarily lesser included offense of felony murder. This is a proper rationale for the double jeopardy identity of offenses problem involved in comparing the offense of felony murder with the offense of either committing or attempting to commit the underlying offense and the result reached in Pinder.

11. SUMMARY:
Subject only to constitutional constraints, it is: (a) a legislative prerogative and duty to enact such criminal offenses as will protect citizens from harmful conduct; (b) an executive duty to prosecute and seek convictions for each and every violation of criminal offenses; and (c) a judicial duty to impose sentences on all convictions. The double jeopardy clauses of the state and federal constitutions prohibit multiple trials, multiple convictions and multiple punishments only when they are based on "the same [statutory] offense" arising out of the same factual event. The constitution does not bar multiple prosecutions or punishments where they are based on either different statutory offenses or different factual events. A citizen can be constitutionally charged, tried, convicted and punished any number of times for any number of distinctly different criminal offenses arising out of or based on the same facts or factual event (the same transaction).
There is a interrelationship between (1) "the same offense" in the double jeopardy clause and the Blockburger test; (2) the legal aspect of the meaning of the word "offense"; (3) the constituent elements of a criminal offense (the law); and (4) category four lesser included offenses as defined in Brown v. State. That relationship is in latent contrast and conflict with a parallel interrelationship that exists between (1) "the single transaction rule," (2) the factual aspect of the meaning of the word "offense," (3) the facets of, or the different criminal acts involved in, a single criminal transaction or episode; and (4) category four lesser included offenses as defined in Brown v. State.
Only statutory offenses which are exactly or substantially the same are "the same offense" within the prohibition of the double jeopardy clauses. The "substance" of criminal offenses is their essential constituent elements. The only offenses that are exactly "the same" are those with exactly the same elements. The only offenses which are substantially "the same," are those "crimes within a crime," where all of the elements of a lesser crime are included in the elements of a greater crime. Thus, for purposes of double jeopardy analysis, "lesser included offenses" means only that multiple criminal prosecutions cannot be had or imposed for both a greater offense and also for any lesser included offense whose elements are entirely included in the elements of the greater crime. This describes and includes only category three of the Brown v. State categorization. This is the true and only proper meaning of "lesser included offense" for constitutional double jeopardy purposes. For the same reason, this is also the only meaning that should be given the phrase "lesser included offenses" as used in the exclusion in section 775.021(4), Florida Statutes (1981). To either misconstrue the double jeopardy clauses to prohibit jeopardy as to a second (lesser) offense merely because it, or some of its elements, occurred during the same factual transaction during which a first (greater) offense occurred, or to misconstrue the phrase "lesser included offenses" in section *62 775.021(4), Florida Statutes, to also include Brown v. State category four offenses, effectively and erroneously reimposes the single transaction rule in Florida, completely thwarts the legislative intent of section 775.021(4), and subverts the constitutional double jeopardy clauses to uselessness.

PART III

12. APPLYING THE CORRECT TEST IN THE INSTANT CASE:
The question in this case is whether constitutional double jeopardy principles bar a trial, conviction and sentence for the offense of first degree premeditated murder (§ 782.04(1)(a), Fla. Stat.) and also for the offense of using a firearm in the commission of a felony (§ 790.07(2), Fla. Stat.), when the murder was committed by using the firearm. Constitutional double jeopardy only prohibits a person from being put in jeopardy twice for "the same offense." So the original question is resolved into another: is the offense of murder "the same offense" as the offense of using a firearm in the commission of a felony?
First degree premeditated murder is an unlawful killing of a human being as the result of a considered (premeditated) specific intent (design) to kill that person or any human being. This offense appears to have 6 elements, viz: To (1) cause (2) the death (3) of a human being (4) as the result of (5) a considered (premeditated) (6) specific intent to cause the death of the person killed or another human being. This offense conspicuously omits any requirement that the killing be accomplished in any particular manner or method. It can be committed by striking, stabbing, shooting, running over with an automobile, throwing off a bridge, giving poisoned chocolates, or in any other manner that man can conceive. Therefore, neither the use of a firearm nor any other particular method or manner of causing death is an essential element of the offense of first degree premeditated murder.[43]
Section 790.07(2), Florida Statutes, provides:
Whoever, while committing, or attempting to commit any felony ... displays, uses, threatens, or attempts to use any firearm ... is guilty... .
This offense appears to have five elements: (1) intentionally (meaning acting with a general intent, as distinguished from acting accidentally), (2) displaying, using or threatening or attempting to use[44] (3) a firearm (4) while committing or attempting to commit (5) any felony. Can one violate this statute without committing first degree premeditated murder? The answer is unequivocally yes. While as one element of this offense the accused must have been committing, or attempting to commit, a felony at the time of the prohibited display, use or threat to use a firearm, the statute relates to "any felony," not any particular felony, and thus does not require commission of the particular felony of first degree premeditated murder. Therefore, one can violate the firearm statute without violating the statute proscribing first degree premeditated murder or any other particular felony.[45]
A comparison of the elements of both of these statutory offenses shows that, not only do they each have at least one element that the other does not have and thereby pass the Blockburger test, they are not even closely affiliated. They are utterly different because neither statutory offense has any element in common with the other.[46] *63 Therefore, appellant was properly convicted and sentenced for both crimes.
The majority agrees that there is no constitutional bar to imposition of separate convictions and sentences on both crimes. However, concluding the firearm offense was a category four "permissive" lesser included offense of the premeditated murder, the majority construes section 775.021(4) to be a statutory bar to separate sentences on both the main offense and the category four offense. Based on this construction, the majority affirms the convictions of both premeditated murder and the firearm offense, affirms the sentence for premeditated murder and reverses the sentence for the firearm offense.
The majority's construction of the statute is based on two assumptions: that the legislature in adopting the statute meant to incorporate the Brown jury verdict alternative definitions of both category three and four lesser included offenses in the "lesser included offenses" exception to the statute; and that implications in recent supreme court cases require such a construction.
Brown, in categorizing crimes upon which a defendant is entitled to have a jury instructed, called two of its categories "lesser included offenses." Simply because the legislature enacted the statute eight years after Brown, the majority assumes that the legislature, in excepting "lesser included offenses" from the statute, meant to adopt Brown's jury verdict alternative definitions of this term. As previously noted, Brown categories were created for the completely separate judicial problem of jury verdict alternatives and have nothing to do with double jeopardy concepts involved in a multiple charge prosecution. The traditional concept of a lesser included offense for double jeopardy purposes is sufficiently defined by a Blockburger comparison of the elements and there is no logical reason to presume that the legislature had in mind the limited concept of jury verdict alternative definitions when they enacted the sentencing statute.
Second, the Florida Supreme Court has not mandated that the phrase "excluding lesser included offenses" in section 775.021(4) be construed to include category four offenses. As noted by the majority, the Florida Supreme Court cases, to date, have either applied the exclusion to "necessarily" lesser included offenses (category three) or refused to apply the exclusion to offenses that were neither category three nor category four offenses. The Florida Supreme Court has never applied the exception to bar sentencing on a category four offense. I do not read the dictum from Ferguson v. State, 420 So.2d 585 (Fla. 1982), cited by the majority as implying that result. I read Borges v. State, 415 So.2d 1265 (Fla. 1982), to hold to the contrary.
Finally, logic (the ultimate measure of truth in law) dictates that the phrase "excluding lesser included offenses" be construed to apply only to constitutional lesser included offenses, which happens to correspond with category three offenses and to exclude category four offenses. The purpose of section 775.021(4) is clear; a person convicted of more than one crime shall be sentenced separately as to each crime, regardless that the crimes were committed in the course of one criminal transaction. For this reason, the statute has often been recognized as abolishing the single transaction rule.[47] However, notwithstanding this clear judicial acknowledgement of an even clearer legislative mandate, construing the exclusion to incompass category four offenses effectively emasculates the statute. To uphold convictions, but strike all but one sentence, for multiple crimes upon which the state could constitutionally obtain both convictions and sentences, merely because of extraneous allegations in the charging document, uses the statute, designed to abolish the single transaction rule, to surreptitiously *64 reimpose the rule. This is especially true where the intent of the state to prosecute for all crimes committed is irrefutable when, as here, the additional crime is charged in a separate count. Thus, the majority's construction of the statute, rather than effectuating the legislative intent, contravenes that intent.
Finally, there are two other reasons why the majority's application in the instant case is incorrect. First, the firearm offense in the instant case is not even a category four lesser included offense of premeditated murder. There were sufficient allegations in count one, charging premeditated murder, to support a charge for the firearm offense; additionally, the evidence at trial was sufficient to support both charges. Normally then, the firearm offense could constitute a category four offense and the defendant would be entitled to a jury instruction, as to that one count, not only for premeditated murder but also for the firearm offense. However, the Florida Supreme Court has consistently held that, in a charge involving the degree crime of homicide, a defendant is only entitled to a jury instruction and jury verdict alternative as to all lesser degrees of homicide, and no others. See, e.g., Lewis v. State, 377 So.2d 640 (Fla. 1979); Martin v. State, 342 So.2d 501 (Fla. 1977); Brown v. State, 245 So.2d 68 (Fla. 1971); Fla.R.Crim.P. 3.490, 3.510. Since count one in the instant case charged appellant with premeditated murder, notwithstanding the allegations in the charging document or proof at trial, he was not entitled to a jury instruction on the firearm offense and was never put in jeopardy of that offense under count one.
Lastly, the Florida Supreme Court has held that a person cannot be convicted of the firearm offense involved in the instant case (use of a firearm while committing a felony) unless the person is also convicted of the underlying felony. Redondo v. State, 403 So.2d 954 (Fla. 1981). By holding that the conviction of the underlying felony in the instant case is the very act which bars the appellant's sentence for the firearm offense, the majority has made it legally impossible for one to ever be sentenced for a conviction of a violation of the offense created by section 790.07(2), Florida Statutes. Thus, the majority's construction of section 775.021(4) is not mandated by either the constitution, the legislature, the Florida Supreme Court, or logic.
In the final analysis, the majority's construction can only lead to unequal application of the law. There is sound constitutional double jeopardy analysis available for solving the conceptual legal problem of determining how many separate offenses a person has committed in a given instance. Two people who commit the exact same acts should be subject to the exact same potential punishment. However, by construing the exception in section 775.021(4) to include category four lesser included offenses, the majority shifts the focus to, and a defendant's potential punishment is determined by, the prosecutor's skill in drafting the charging document.
NOTES
[1] The indictment in this case charged two counts, as follows:

COUNT ONE
CHARGE: Murder in the First Degree in Violation of F.S. 782.04
SPECIFICATION OF CHARGE: In that Charles L. Baker, did on or about the 31st day of August, 1979, in Volusia County, Florida, then and there unlawfully and from a premeditated design to effect the death of one Josephine Baker, a human being, did kill and murder Josephine Baker by shooting her with a firearm, to-wit: a pistol
COUNT TWO
CHARGE: Use of a Firearm in the Commission of a Felony in Violation of F.S. 790.07(2) SPECIFICATION OF CHARGE: In that Charles L. Baker, on or about the 31st day of August, 1979, in Volusia County, Florida, while committing or attempting to commit a felony, to-wit: murder, did then and there in the presence of Josephine Baker, display, use, threaten or attempt to use a firearm, to-wit: a pistol
[2] Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).
[3] An exception under Hegstrom would be that the double jeopardy clause of the United States Constitution prohibits multiple prosecutions and multiple punishments for a single legislatively defined offense. See Hegstrom, 401 So.2d at 1345.
[4] Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
[5] It seems apparent to this author that multiple convictions for lesser included offenses, even in one prosecution, constitute a form of punishment prohibited by the double jeopardy clauses of Article V of the United States Constitution. See Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). See e.g., the multiple offender statutes of the various states.
[1] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[2] Borges v. State, 415 So.2d 1265 (Fla. 1982).
[3] shall be unlawful for any person to sell, bargain, exchange or give away any of the drugs specified in section 691 of this title, except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue."
Blockburger, 52 S.Ct. at 181 n. 2.
[1] While this opinion focuses on multiple charges in a single trial, this law would apply equally to multiple charges in successive trials. In its prohibition of double jeopardy as to "the same offense," the constitution makes no distinction between successive or simultaneous prosecutions. A separate jeopardy results as to each criminal charge of which an accused may possibly be lawfully convicted, whether the prosecution as to any charge is simultaneous or successive.
[2] Another class of cases involving constitutional double jeopardy provisions are those involving what is admittedly or obviously "the same offense" (that is, one accusation that one particular act or factual event violated one particular criminal statutory prohibition) and in which the prime question is the meaning of the words "to be put," "twice" and "jeopardy." This group of cases usually involves retrials, successive trials in courts of different sovereign jurisdiction, and problems as to what jeopardy means and when it attaches. In these cases double jeopardy is sometimes called "former jeopardy" because these problems normally relate to successive trials: a "former" trial and a second trial later in point of time. See text at section 9D herein.
[3] This name is not exactly accurate. Florida has, of course, adopted common law crimes in sections 2.01 and 775.01, Florida Statutes (1982), and the constitutional double jeopardy clause likewise applies to criminal offenses defined by common law.
[4] See 22 C.J.S. Criminal Law § 278(1), at 713 n. 32 (1961).
[5] Bartee v. State, 401 So.2d 890 (Fla. 5th DCA 1981). However, one statutory offense as described in one statutory prohibition is still "the same offense," although multiple alternative ways of violating the one statute could have constitutionally qualified as distinctly different offenses if the legislature had separated the different prohibited acts and placed them in separate statutes. This presents a problem when one of two statutory offenses being compared for sameness or difference has a set of alternative or variable elements. See, e.g., Bartee; Bell v. State, 394 So.2d 570 (Fla. 5th DCA 1981).
[6] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); Thomas v. United States, 156 F. 897 (8th Cir.1907); Spears v. People, 220 Ill. 72, 77 N.E. 112 (1906); Pivak v. State, 202 Ind. 417, 175 N.E. 278 (1930); State v. Moore, 326 Mo. 1199, 33 S.W.2d 905 (1930); Usary v. State, 172 Tenn. 305, 112 S.W.2d 7 (1938); State v. Brooks, 215 Wis. 134, 254 N.W. 374 (1934).
[7] In State v. Beamon, 298 So.2d 376 (Fla. 1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), since Beamon was charged twice with robbery, it is obvious that the court was using the word "offense" to relate to the factual event. In Miles v. State, 418 So.2d 1070 (Fla. 5th DCA 1982), each count of the two count information charged a violation of the same statutory offense (willful failure to appear) relating to the exact same factual event (the failure to appear at the one same time and place) and the court found double jeopardy barred the second of the two charges and convictions. Contrarily, in State v. Bowden, 154 Fla. 511, 18 So.2d 478, 480 (1944), the court said that the words "same offense" meant the same identical crime, not the same acts, circumstances or situation out of which the crime arises. Harper v. State, 386 So.2d 808 (Fla. 1st DCA 1980), confuses "the same criminal act" with "the same [criminal] offense."
[8] Various words and phrases are used to describe what are, for various purposes, perceived as one unit of facts, usually with a time connotation, such as: escapade, episode (see Fla.R.Crim.P. 3.191(h)(1)), course of conduct, same set of facts, scheme, trip, frolic, spree, binge, toot or whatever. For many purposes in law, the word "transaction" or the terms "single transaction" or "same transaction" have been used to describe a unit of measure of facts; however, these terms have come to mean a vague group of facts with undefined perimeter that can include many factual events, each of which may constitute the violation of a statutory offense. Therefore, "transaction" is a rather gross differentiation and is not sufficiently accurate for double jeopardy purposes because factual events, as that term is used here to mean facts violative of a statutory offense, can be complex and at one instant of time can stack kaleidoscopically; they are not divisioned neatly into units, pigeonholed horizontally in rows as to time and vertically into tiers as to place.
[9] Llanos v. State, 401 So.2d 848 (Fla. 5th DCA 1981).
[10] See, e.g., Bass v. State, 380 So.2d 1181 (Fla. 5th DCA 1980).
[11] See, e.g., Drakes v. State, 400 So.2d 487 (Fla. 5th DCA 1981) (theft of multiple items during one burglary held to be one theft); Castleberry v. State, 402 So.2d 1231 (Fla. 5th DCA 1981) (where the taking of a car and other property was considered factually to constitute one robbery, a separate conviction of grand auto theft was reversed because the auto theft was considered a necessarily lesser included offense of the robbery and thus was "the same offense" for double jeopardy purposes). Castleberry also holds that one entry of a dwelling cannot support three convictions of burglary. Muszynski v. State, 392 So.2d 63 (Fla. 5th DCA 1981), holds that one death of one person, a single factual event, cannot support two homicide convictions.
[12] It is in this secondary analysis of the "factual offense" that it can correctly be said that two (factual) offenses are "the same" unless each requires proof of a fact that the other does not. See text, section 8, infra.
[13] For example, see Preston v. State, 397 So.2d 712 (Fla. 5th DCA 1981) which correctly disregards the fact that both of two offenses arose out of the same facts, compared the elements of each, found that each offense had "an element not required in the other" and upheld convictions of both. See also Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981); Billions v. State, 399 So.2d 1086 (Fla. 1st DCA 1981) (both making a correct Blockburger analysis).
[14] For example, see State v. Katz, 402 So.2d 1184 (Fla. 1981), an excellent case distinguishing the charges in one case from those in a second prosecution for violation of the same statutory offense but relating to a different factual event. Actually, Katz involved two sets of double prosecutions, one of which differentiated on the basis of time and the other on the basis of a different object.
[15] A proposed "universal formula" sought in vain in State v. Stiefel, 256 So.2d 581 (Fla. 2d DCA 1972).
[16] Unfortunately, statutes attempting to define crimes often do not adequately describe all of the elements constitutionally necessary for a criminal offense and the courts, by case law, have sometimes been prone to add missing essential elements, rather than striking statutes down as being constitutionally insufficient. The single greatest good that the legislature could do for the criminal justice system of the State of Florida would be to rewrite all criminal statutes and define each crime (and each defense) individually in numbered terms of their constituent elements. This would eliminate much needless confusion and litigation. See, e.g., Baxley v. State, 411 So.2d 194 (Fla. 5th DCA 1981); Hicks v. State, 407 So.2d 252 (Fla. 5th DCA 1981); Gray v. State, 404 So.2d 388 (Fla. 5th DCA 1981).
[17] "The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and, if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Ex Parte Nielsen, 131 U.S. at 188, 9 S.Ct. at 676.
[18] "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not. Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.
[19] The court concluded that the two offenses were different because "each of the offenses created requires proof of a different element." Blockburger, 284 U.S. at 304, 52 S.Ct. at 182. (emphasis added) The court specifically disapproved Ballerini v. Aderholt, 44 F.2d 352 (5th Cir.1930), in which the Fifth Circuit, in considering a multiple prosecution under separate statutes for one sale of heroin (as in Blockburger), focused on the fact that there had been proof of but one sale and reasoned that, therefore, there had been but one "criminal act," for which the defendant could be prosecuted only once.
[20] The word "incident" sounds like the words "facet" and "aspect" as used in cases involving the now abrogated "single transaction rule". See, e.g., Johnson v. State, 366 So.2d 418 (Fla. 1978).
[21] See, e.g., State v. Pinder, 375 So.2d 836 (Fla. 1979); Harper v. State, 386 So.2d 808 (Fla. 1st DCA 1980). Contra, State v. Lowe, 130 So.2d 288 (Fla. 2d DCA 1961), "In this jurisdiction, the Supreme Court of Florida has aligned itself with the majority view that double jeopardy applies to the offense, not the act causing the criminal offense." Id. at 289. See also Cantrell v. State, 405 So.2d 986 (Fla. 1st DCA 1981).
[22] Judge Hurley, concurring in Borges, states that the single transaction rule first appeared in Simmons v. State, 151 Fla. 778, 10 So.2d 436 (1942), but Chief Judge Robert Trask Mann, in Edmond v. State, 280 So.2d 449 (Fla. 2d DCA 1973), traces it to Cribb v. State, 9 Fla. 409, 416 (1861).
[23] See, e.g., Edmond v. State, 280 So.2d 449 (Fla. 2d DCA 1973), and cases cited therein.
[24] See Borges v. State, 415 So.2d 1265 (Fla. 1982); Gonzalez v. State, 367 So.2d 1008 (Fla. 1979); State v. Munford, 357 So.2d 706 (Fla. 1978); Portee v. State, 392 So.2d 314 (Fla. 2d DCA 1980).
[25] See, e.g., Stone v. State, 402 So.2d 1222 (Fla. 5th DCA 1981); James v. State, 399 So.2d 424 (Fla. 5th DCA 1981); Walker v. State, 386 So.2d 630 (Fla. 5th DCA 1980). It is not the commonality of some elements that makes two offenses "the same offense" for double jeopardy but the absence of at least one different element. The focus on common elements is just another erroneous way of thinking in terms of the single transaction rule. See, e.g., Jackson v. State, 404 So.2d 369 (Fla. 5th DCA 1981). Ianelli, cited in the footnote to the above quote from Illinois v. Vitale, makes it clear that if the Blockburger test is met, convictions and punishments for each of two crimes is authorized "notwithstanding a substantial overlap in the proof offered to establish the crimes." Since proof overlaps only when two crimes arise out of a single factual event (single transaction), this means that mere commonalty of some events occurring in the same factual transaction does not constitute double jeopardy.
[26] See 22 C.J.S. Criminal Law § 283 (1961).
[27] The use of firearms and weapons in the commission of crimes is sometimes an essential element of the basic crime, as in aggravated assault, § 784.021(1)(a), Fla. Stat., and aggravated battery, § 784.045(1)(b), but is such a favorite cause for enhancing punishment that it is often compounded by provisions within the statutory prohibition of the basic crime (see section 810.02(2) as to burglary, section 812.13(2) as to robbery, and section 794.011(3) as to sexual battery); by separate enhancing statutes (see § 775.087); or by separate criminal statutes (see § 790.07). Hicks v. State, 382 So.2d 389 (Fla. 1st DCA 1980), and James v. State, 399 So.2d 424 (Fla. 5th DCA 1981), are examples and illustrate how an additional element alleged to enhance permissible punishment for one crime can result in such a similarity of elements with another crime as to raise a double jeopardy question. The dissenting opinion of Judge Mason in Hicks is more correct, although Judge Mason incorrectly focused on the allegations in the charging document, rather than on the elements of the two statutory offenses involved.
[28] Walker v. State, 386 So.2d 630 (Fla. 5th DCA 1980), takes a similar view of the meaning of "lesser."
[29] See, e.g., Walker v. State, 386 So.2d 630 (Fla. 5th DCA 1980). See also the comment on the schedule of lesser included offenses by the Supreme Court Committee on Standard Jury Instructions in Criminal Cases adopted by Supreme Court opinion (Nos. 57,734 and 58,799), using a guideline that "no offense is deemed to be a lesser offense if it carries the same penalty as the crime under consideration," which commentary was apparently confused by Carpenter v. State, 394 So.2d 144 (Fla. 2d DCA 1981), holding, correctly, that one crime could be a lesser included offense of another crime even though both carried the same penalty. Penalty has nothing to do with the correct meaning of "lesser included offense."
[30] Florida Rule of Criminal Procedure 3.150(a) permits the joinder of offenses in a single information only when they "are based on the same act or transaction or on two or more connected acts or transactions."
[31] This problem was dealt with, but not analyzed, in Ziegler v. State, 385 So.2d 1168 (Fla. 1st DCA 1980), where the majority held the defendant had violated two separate statutes for constitutional double jeopardy purposes. The dissent in that case concedes the statutes were separate but erroneously went on to review the facts and determined that one offense was a Brown category four lesser included offense of the other.
[32] This is exactly what troubled the two DCA judges concurring in Borges v. State, 394 So.2d 1046 (Fla. 4th DCA 1981), and the supreme court, upon certification of that case, recently explained that, although the concept of category four offenses is useful in the jury instruction context, in double jeopardy analysis, it is "of limited utility." Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982). This is an extreme understatement  it is not only not useful, it is solely a negative or confusion factor.
[33] But see Stone v. State, 402 So.2d 1222 (Fla. 5th DCA 1981), and cases cited in note 8 therein.
[34] Yet, amazingly, in Hegstrom it is said "But we see nothing in Blockburger which bars multiple convictions for lesser included offenses." Hegstrom v. State, 401 So.2d 1343, 1346 (Fla. 1981).
[35] But see Chapman v. State, 389 So.2d 1065 (Fla. 5th DCA 1980), holding that the constitutional right against double jeopardy is waived by failure to raise the question by motion to dismiss. See also Jeffers v. United States, 432 U.S. 137, 151-2, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977). The qualm of the special concurring opinion in Chapman as to the soundness of assuming a waiver of constitutional double jeopardy from mere failure to assert it, is well-founded and is the real reason for Muszynski v. State, 392 So.2d 63 (Fla. 5th DCA 1981), which holds, without mentioning double jeopardy, that convictions of both first degree murder and also of second degree murder relating to one death was reversible "fundamental error," despite failure to object at trial or on appeal. But see Ray v. State, 403 So.2d 956 (Fla. 1981).
[36] The federal criminal system avoids most of the problems created in Florida by the Brown v. State category four concept. Rule 31(c) of the Federal Rules of Criminal Procedure provides that a defendant may be found guilty of an offense "necessarily included" in the offense charged. However, interestingly, questions as to whether the included offense have common elements with the greater and whether the included offense be lesser in terms of few elements or in terms of lesser penalty plague the federal field. See Annot., 11 A.L.R.Fed. 173 (1972) ("What Constitutes Lesser Offenses `Necessarily Included' in Offense Charged Under Rule 31(c) of Federal Rules of Criminal Procedure.")
[37] The Brown v. State definition of a category three offense was a reportive or lexical definition and was connotative, referring to the essential characteristic of the lesser included offense as being necessarily included in allegations of the elements of the greater offense. However the definition of a category four offense was purely operative: if the same count charging the greater offense also contained additional allegations that charged another offense (other than a necessarily lesser included offense) that other offense was a category four "lesser included offense." While this latter definition was stipulative as definitional of a new concept because of its source and author and its ostensible reasonableness, it was so persuasive that it was quickly absorbed into standard legal terminology and apparently was never questioned or challenged. The DCA judges in Borges well grasped their problem and would have quickly solved it, had they thought of challenging the essential validity of the Brown v. State conceptualization of its category four as being inapplicable in the double jeopardy concept.
[38] This is a partial explanation why Blockburger, decided in 1932, was never cited in Florida until 1979 when it was cited in State v. Pinder, 375 So.2d 836 (Fla. 1979).
[39] One wonders how and on what basis the Supreme Court Committee on Standard Jury Instructions in Criminal Cases and the Florida Bar Criminal Rules Committee, without considering the particular written charges or considering the evidence in the case, came up with the list of category four lesser included offenses published in the Florida Bar News, May 15, 1981, Vol. 8, No. 9, page 7. See In re Florida Rules of Criminal Procedure, 403 So.2d 979 (Fla. 1981); In re Standard Jury Instructions in Criminal Cases, No. 58,799 (Fla. June 5, 1981) [1981 FLW 583]; In re Standard Jury Instructions in Criminal Cases, Nos. 56,734 and 58,799 (Fla. April 16, 1981) [1981 FLW 305]. Any offense, other than the charged offense and any offenses necessarily included in the offense charged can, if alleged in a count with the charged offense and supported by some evidence at trial, be a category 4 "lesser included offense" of any other charged offense.
[40] See the dissent in Bell v. State, 411 So.2d 319 (Fla. 5th DCA 1982).
[41] See generally 21 Am.Jur.2d Criminal Law § 243 and 244 and 22 C.J.S. Criminal Law, § 238.
[42] This occurs when a jurisdiction has a single transaction rule and is the basis for Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, as is explained in Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), both of which cases are the basis for the "single trial" versus "successive prosecutions" comment in Brown v. Ohio, which comment is said in Whalen to be the basis of disorder in state appellate court decisions including Pinder. Apparently Hegstrom took this as criticism of Pinder, not recognizing that the confusion in the multiple views in Whalen arose not from making a double jeopardy/identity of offenses problem distinction between single and successive trial settings, but related to mixing the identity of offense problems with the problem of multiple sentencing under the substantive law of the District of Columbia prohibiting separate punishments for two offenses arising out of the same criminal transaction. Thus, the decisions in Bell, Gore and Whalen were based on the applicability of "single transaction" rules and Hegstrom should not have relied on those cases to criticize Pinder in view of the fact that the single transaction rule has been abolished in Florida.
[43] Similarly, the use of a firearm has been held to not be included within the definition of second degree murder or manslaughter. Smith v. Crockett, 383 So.2d 1166 (Fla. 3d DCA 1980).
[44] This illustrates a set of alternative elements.
[45] The fact that an accused in a particular case chose to actually commit the murder in a manner that also violated a distinctly different statutory prohibition is constitutionally immaterial.
[46] Especially in view of Redondo v. State, 403 So.2d 954 (Fla. 1981), it is arguable that the whole felony, committed or attempted by use of a firearm, is a composite element of the offense prohibited by section 790.07(2), Florida Statutes. However, if that argument is accepted it would logically follow that the background felony (attempted or committed with the firearm) would then be a true lesser included offense of the firearm offense and double jeopardy would bar a prosecution of both offenses.
[47] See, e.g., Ferguson v. State, 420 So.2d 585 No. 61,373 (Fla. 1982); Borges v. State, 415 So.2d 1265 (Fla. 1982); Gonzalez v. State, 367 So.2d 1008 (Fla. 1979); State v. Munford, 357 So.2d 706 (Fla. 1978).